## HALL v. MONTGOMERY.

1. The Registers and Receivers of the different land offices, are constituted by the acts of Congress, a tribunal to settle controversies relating to claims to pre-emption rights, and therefore an oath administered in such a controversy before the Register alone, is *extra judicial*, and as perjury cannot be predicated of such evidence, an action of slander cannot be maintained for a charge of false swearing in such a proceeding.

2. An accusation of perjury implies within itself every thing necessary to constitute the offence, and if the charge has reference to *extra judicial* testimony, the *onus* lies on the defendant of showing it. It is not necessary in such a case to alledge a *colloquium*, showing that the charge related to material testimony in a judicial proceeding.

Error to the Circuit Court of Benton.

Hall v. Montgomery.

SLANDER by the plaintiff against the defendant in error. The declaration contains fourteen counts. The first count, after the formal introduction, proceeds to alledge, that a certain matter was pending before the Register of DeKalb county, who was duly authorized to act in the premises, and try said matters of controversy, when James L. Lewis, by virtue of the pre-emption laws of the United States, passed in the year 1838, was claimant of a certain quarter section of land lying in the district attached to said land office, and a moiety of which said quarter section of land one Charles D. Scroggins claimed adversely to the said James L. Lewis, and the said Scroggins and Lewis, having on the 6th June, 1842, pursuant to previous notice, met at the said office at Lebanon, for the trial of their respective claims, the said Hall was then and there called on by the said Lewis as a witness, to testify in his behalf, and the said Thomas Hall did then and there, and after being duly sworn on his corporal oath, before Simpson C. Newson, a notary public in said county of DeKalb, duly authorized and empowered to administer said oath to the plaintiff, give testimony in behalf of said Lewis, material to the issue and matter then pending. The count then, omitting the formal part, proceeds to alledge, that in a certain discourse, which the defendant then and there had, of and concerning the plaintiff, in the presence and hearing of divers good and worthy citizens of the State in the county aforesaid, falsely and maliciously, spoke and published, of and concerning the plaintiff, and of and concerning the matter which had been so pending, and concerning the said evidence so given in by the said plaintiff, the false, scandalous, malicious, and defamatory words, following, that is to say, Hall, (meaning Thomas Hall, the plaintiff,) has sworn falsely referring to the evidence, and oath of the said Hall, so taken and given as aforesaid.

The succeeding eleven counts, are framed upon the same matter, changing the phraseology of the words alledged to be spoken, in reference to the testimony of the plaintiff, upon the trial in the land office. 13 count. And afterwards, to wit, &c. in a certain other discourse, which the said defendant then and there had, in the presence and hearing of divers other good and worthy citizens of the State, the said defendant further contriving, &c. then and there, in the hearing and presence of the said last mentioned persons, falsely and maliciously, spoke and published, of and con-

cerning said plaintiff, the false, scandalous and malicious, and defamatory words following, that is to say, he, meaning the plaintiff, has perjured himself.

14 count. Same as the last, except that the words charged are, Hall (meaning the plaintiff,) has perjured himself.

The defendant demurred to each count separately, and the Court sustained the demurrer to all the counts of the declaration, and rendered judgment for the defendant. This is now assigned as error.

S. F. RICE and L. E. PARSONS, for the plaintiff in error, argued that the Register, or Receiver, is a court to decide controversies, and may administer an oath. [Land Laws, part 1, 378-9, § 2, 3; 431, § 2, 3.] That the oath being administered by the notary public, in the presence of the Register, was the act of the latter. [2 Conn. 40.]

The two last counts are certainly good, as they alledge the charge of perjury, and a reference may be had to the previous counts for dates, &c [Starkie on Slander, 31, 54; 9 East, 95; Cro. Jas. 648; 5 John. 211, 430; 6 Ala. Rep. 281.]

W. P. CHILTON and F. W. BOWDON, for defendant in error.

The twelve first counts are clearly bad. They charge a controversy before the Register of the land office, but the Register alone cannot act; the power to act is given him in conjunction with the Receiver. [Land Laws, 1 part, 165, § 3; 429, § 1; 437, § 4; 2 part, 84, No. 57; 729, No. 682.]

The oath was administered by a notary public, instead of the Register and Receiver, who are a statutory court, and was therefore extra judicial. [Land L. part 1, 378-9, § 2, 3; part 2, 431, § 2, 3.]

The power conferred by the laws of this State on notaries public, does not extend to the offices of the Federal government, (Dig. 379,) and at common law he was merely a commercial officer.

The oath being extra judicial, no perjury could be committed. [2 Russ. 540; 3 C. & P. 419; 3 Salk. 269; 14 Eng. C. L. 376; 1 N. & McC. 547.]

The two last counts refer to the preceding, and partake of their character.

Hall v. Montgomery.

The averment of special damage is insufficient. [8 Porter, 487.]

ORMOND, J.—The principal question presented upon the first twelve counts of the declaration, is, whether the trial in which the alledged false swearing took place, was a judicial proceeding. It appears, a certain matter of controversy was pending, before the Register of the land office, in DeKalb county, wherein James L. Lewis, by virtue of the pre-emption law of Congress of the year 1838, was claimant of a quarter section of land, a moiety of which was claimed by one Scroggins adversely to Lewis. That the plaintiff was called upon as a witness by Lewis in support of his claim—that he was sworn to testify in behalf of Lewis, by a notary public, and that it was in reference to the testimony so given in, that the defendant accused him of swearing falsely.

The act of Congress of 22d June, 1838, "to grant pre-emption to settlers on the public lands," gives to settlers on the public lands, under certain limitations not necessary to be noticed, "all the benefits and privileges of an act, entitled an act, to grant pre-emption rights to settlers on the public lands, approved May 9, 1830," with a proviso, that when more than one person had settled on, and cultivated any one quarter section of land, each should have an equal share, or interest. [1 Land Laws, 574.]

This act does not provide for the settlement of controversies, where more than one person claimed a pre-emption upon a quarter section of land, but by reference to the act of 1830, which is in effect embodied in the act of 1838, it appears by the third section, that "the proof of settlement and improvement, should be made to the Register and Receiver, of the land district in which such lands may lie, agreeably to the rules to be prescribed by the Commissioner of the General Land Office, for that purpose."

It is very clear, that the Register and Receiver were acting in a judicial capacity, in thus ascertaining the facts upon which a pre-emption was to issue, and so it has universally been considered by the General Government. Such was the opinion of Mr. Butler, the Attorney General, as expressed upon this law, in answer to inquiries upon this subject. He says, "In weighing the evidence, and deciding on its sufficiency, these officers act in a judicial capacity," and he proceeds to say, no other officer of the

65

government can reverse their decision. [2 Land Laws, 84, No. 57.] To the same effect is the communication of the Commissioner to the Register and Receiver at Tallahassee. [Id. 729, No. 682.]

This being then a special judicial tribunal, created by Congress, it can only act in the mode, and upon the subjects pointed out in the law. The power being delegated to the Receiver and Register jointly, cannot be exercised by one of them separately, and such separate action would be as destitute of legal validity, as would be the joint action of both, upon a subject not within their cognizance. A reference has been made to the act of 24th May, 1824, for the correction of errors in entries at the land office, 1 Land Laws, 378, by the second section of which power was given to either the Receiver, or Register, to administer the oath to the party, who desired to change his entry, which was to be transmitted to the General Land Office. This act is upon an entirely different subject, in no manner connected with the present, as the Receiver, or Register, receiving the affidavit had no judicial power conferred on them beyond the power of administering the oath, and can have no influence whatever upon the present question.

It results from this view, that the proceeding before the Register alone, was extra judicial—that he did not constitute the Court, appointed by Congress for the ascertainment of the disputed facts, and that consequently, the oath administered, not being in the course of a judicial proceeding, perjury cannot be assigned upon it, or predicated of the testimony, however wrong in a moral point of view it might have been, to have stated a falsehood upon such examination.

These considerations relieve us from the necessity of inquiring whether the oath, though administered by a notary public, who as such had no power to administer it, might not be considered as the act of the Court, and administered by its direction. It also relieves us from the consideration of the numerous counts in detail, in many of which it might perhaps be doubted, whether the words as charged are actionable.

The two last counts of the declaration which charge the speaking of words actionable in themselves, stand upon a different footing. The accusation of perjury, implies within itself, every thing necessary to constitute the offence, and if the accusation had re-

ference to testimony delivered *extra* judicially, the *onus* lies on the defendant of showing it.  [Jackson v. Mann, 2 Caine's Rep. 91 ; Wood v. Clark, 2 John. Rep. 10.]  And therefore in such cases no *colloquium*, showing that the charge related to material testimony in a judicial proceeding is necessary.

It is however urged, that we must understand the two last counts as referring to, and adopting all the first count, except the words spoken, and that therefore the declaration itself shows, that perjury in its legal sense, was not charged.   This is doubtless true, if the declaration could be so interpreted, but we do not understand the reference in the two last counts, to the preceding, to be any thing more, than an adoption of the formal part of the first count, which for the sake of brevity, is thus silently incorporated into these, and considered as if again repeated.   So considering these counts, they are good, and the demurrers to them were improperly sustained.

There is no special damage alledged, as supposed, in these counts of the declaration.  The general charge, that in consequence of the words, " divers of his neighbors have refused to have any transaction, acquaintance, or discourse with him," &c. would not have authorized proof of special damage, and amounts to no more than a general allegation of damage, sustained by the speaking of the words.

Let the judgment be reversed and the cause remanded.